**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
KEY WEST DIVISION**

**CASE NO:**

GISELLE ACOSTA, on behalf of herself
and all others similarly situated,

    Plaintiff(s),
v.

DILLY KEY RESTAURANT HOLDING, LLC,

    Defendant.
_____/

**COLLECTIVE ACTION COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL**

Plaintiff, GISELLE ACOSTA ("Plaintiff") on behalf of herself and others similarly situated, and pursuant to 29 U.S.C. § 216(b), files this Collective Action Complaint and Demand for Jury Trial against Defendant, DILLY KEY RESTAURANT HOLDING, LLC (hereinafter referred to as "Defendant"), for failure to pay federal minimum wages and overtime wages for certain hours worked to all restaurant servers and bartenders (hereinafter "class members"), as follows:

**INTRODUCTION**

This is a Fair Labor Standards Act ("FLSA") collective action brought on behalf of restaurant servers and bartenders who work or have worked at the Senior Frijoles, Sundowners, and Cactus Jacks restaurants in Key Largo, Florida. Defendant violated the minimum wage requirements under federal law because it failed to compensate restaurant servers and bartenders for certain hours worked during shifts. Defendant further required off-the-clock work from its servers and bartenders that often resulted in overtime wage violations that are not referenced on Defendant's time records. Defendant also violated the minimum wage requirements under federal law because it compensated restaurant servers and bartenders at the reduced "tip credit" wage

notwithstanding that servers and bartenders were required to spend more than 20% of their shifts performing non-tipped duties and responsibilities. As a result, Plaintiff, and similarly situated restaurant servers and bartenders have been denied federally mandated minimum and overtime wages in one or more workweeks during their employment.

## PARTIES

1. During all times material hereto, Plaintiff was a resident of Key Largo, Florida, over the age of 18 years, and otherwise *sui juris*.

2. Plaintiff and the class members are/were restaurant servers and/or bartenders who worked for Defendant within the last three (3) years in Key Largo, Florida

3. Plaintiff began working for Defendant in January 2020 and is still employed as of the date of this filing.

4. The proposed class members worked for Defendant in the same/identical capacity as Plaintiff in that they were restaurant servers or bartenders for Defendant during the relevant time period.

5. Plaintiff seeks certification of four (4) separate classes under 29 U.S.C. § 216(b) for violations of the FLSA as follows:

> **Off-the-Clock: All restaurant servers and bartenders who worked for Defendant at its restaurants in Key Largo, Florida during the three (3) years preceding this lawsuit who in one or more workweeks were required to work off-the-clock during Restaurant Check-Out.**
>
> **Overtime Class: All restaurant servers and bartenders who worked for Defendant at its restaurants in Key Largo, Florida during the three (3) years preceding this lawsuit and whose off-the-clock work in one or more workweeks resulted in overtime hours being worked and not properly compensated.**

> **80/20 Class for Lunch Shifts**: All restaurant servers and bartenders who worked for Defendant in Key Largo, Florida during the three (3) years preceding this lawsuit who in one or more workweeks were required to spend more than 20% of their lunch shift performing "non-tipped" incidental duties and did not receive the full applicable minimum wage for this work.
>
> **80/20 Class for Dinner Shifts**: All restaurant servers and bartenders who worked for Defendant in Key Largo, Florida during the three (3) years preceding this lawsuit who in one or more workweeks were required to spend more than 20% of their dinner shift performing "non-tipped" incidental duties and did not receive the full applicable minimum wage for this work.

6. The precise size and identity of each class should be ascertainable from the business records, tax records, and/or employee or personnel records of Defendant; however, Plaintiff estimates that the total number of class members exceeds 100[1] restaurant servers and bartenders.

7. During all times material hereto, Defendant was a Florida limited liability company operating and transacting business within Monroe County, Florida, within the jurisdiction of this Honorable Court.

8. Defendant owns, operates and controls multiple restaurants located at 103900 Overseas Highway, Key Largo, FL 33037, known to the public as Señor Frijoles, Sundowners, and Cactus Jacks.

9. Defendant was Plaintiff's employer during all times pertinent to the allegations herein.

10. During all times material hereto, Defendant was vested with the ultimate control and decision-making authority over the hiring, firing, scheduling, day-to-day operations, and pay

---

[1] Defendant claims that it retained 81 jobs in the Payment Protection Program documentation that it submitted to the federal government during the COVID-19 pandemic. https://www.federalpay.org/paycheck-protection-program/dilly-key-restaurant-holding-llc-key-largo-fl (last visited May 18, 2021).

3

practices of Señior Frijoles, Sundowners and Cactus Jacks locations during the relevant time period.

## JURISDICTION AND VENUE

11. This action is brought under 29 U.S.C. § 216(b) to recover damages from Defendant, injunctive relief, and reasonable attorney's fees and costs.

12. A substantial majority of the acts and/or omissions giving rise to this dispute took place within Monroe County, Florida, which falls within the jurisdiction of this Honorable Court.

13. Defendant regularly transacts business in Monroe County, Florida, and jurisdiction is therefore proper.

14. Venue is also proper within Monroe County, Florida.

## FLSA COVERAGE

15. Defendant is an enterprise covered by the FLSA by virtue of the fact that it is an enterprise engaged in commerce or in the production of goods for commerce, in that Defendant had at least two employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

16. Defendant's employees regularly handled goods such as food, beverages, napkins, silverware, appliances, tacos, rice, beans, burritos, tequila, sombreros, other food items, restaurant equipment, chairs, tables, vacuum cleaners, and other materials that had previously travelled through interstate commerce.

17. Defendant had an annual gross revenue in excess of $500,000.00 in 2016, 2017, 2018, 2019, 2020 and is expected to gross in excess of $500,000.00 in 2021.

## **GENERAL ALLEGATIONS**

18. Defendant owns and operates the restaurants named "Señor Frjioles," "Sundowners," and "Cactus Jacks," which are all located at 103900 Overseas Highway, Key Largo, FL 33037.

19. During all times material hereto, Señor Frijoles, Sundowners, and Cactus Jacks intermingled resources, employee personnel and managers for the collective benefit of these restaurants.

20. Moreover, during all times material hereto, Señor Frijoles, Sundowners, and Cactus Jacks had common ownership, common management, related business activities and a common business purpose.

21. Furthermore, Señor Frijoles, Sundowners, and Cactus Jacks committed substantially similar (or in some cases identical) violations of federal minimum wage and overtime law during all times material hereto.

22. Plaintiff worked for Defendant as a restaurant server and/or bartender at 103900 Overseas Highway, Key Largo, FL 33037 during her employment period.

### **DEFENDANT REQUIRES PLAINTIFF AND SIMILARLY SITUATED SERVERS AND BARTENDERS TO SPEND MORE THAN 20% OF THE LUNCH SHIFT PERFORMING NON-TIPPED DUTIES**

23. During her employment period with the Defendant, Plaintiff and members of the putative class of servers and bartenders were assigned both "lunch" shifts and "dinner" shifts.

24. When working a "lunch" shift, Plaintiff and other servers and bartenders were often required to report to work prior to opening at approximately 9:00 am.

25. If working a single lunch shift, Defendant scheduled Plaintiff and putative class members to work until approximately 4:00 pm.

26. Defendant does not open to the public until approximately 11:00 a.m. each day. Prior to opening the restaurant, from 9:00 a.m. until 11:00 a.m. – a period of approximately two (2) hours – Defendant instructed Plaintiff and all other similarly situated restaurant servers and bartenders to slice lemons, fill salt and pepper shakers, roll silverware, set tables, clean the beverage stations, set chairs, clean windows, clean tables, clean condiments, vacuum and mop the floors, clean the outside of the restaurants, and perform additional "non-tipped" duties which are merely incidental to the employees' primary duties in the restaurant. Furthermore, prior to opening to the public, Plaintiff and the other servers and bartenders were paid the reduced tip credit wage, even though they could not earn any tips during this time period.

27. Before completing each "lunch" shift, Plaintiff and the putative class members were required to clean dining room tables, clean the beverage stations, fill salt and pepper shakers, vacuum and clean the floors and tables, and to perform other "non-tipped" duties and responsibilities that are merely incident to the employees' primary duties. At a minimum, these responsibilities took at least thirty (30) minutes to perform each shift but could take as much as two (2) hours on some days depending on the volume of business.

28. Furthermore, at the end of each lunch shift, servers and bartenders were required to clock out and wait for a manager to "Check Out," which is a process whereby Defendant calculated how much money its employees had to tip out other employees.

29. While Plaintiff and other servers and bartenders were waiting for managers to "check out," they were not allowed to leave work and were often required to continue working, despite having clocked out.

30. This off-the-clock work often lasted between thirty (30) minutes and one and one half (1.5) hours.

6

31. During a typical "lunch" shift, Plaintiff and putative class members were regularly required to spend a total of *more than* **20%** of the shift performing the aforementioned "not-tipped" duties and responsibilities.

32. At least two (2) hours out of Plaintiff's typical seven (7) hour lunch shift was spent performing "non-tipped" duties. Accordingly, Plaintiff and the putative class members spent more than 28% of the "lunch" shift performing "non-tipped" duties.

33. Defendant paid Plaintiff and other similarly situated servers and bartenders the reduced cash wage of $5.44 per hour in 2019, $5.54 per hour in 2020, and $5.63 per hour in 2021.

34. In the years 2016 and 2017, servers and bartenders were compensated at a reduced wage of $5.08 per hour for their first forty (40) hours of work per week. In 2018, servers and bartenders were compensated at the reduced wage of $5.23 per hour for their first forty (40) hours of work per week.

35. As a result, Plaintiff and the putative class members are entitled to receive the $3.02 tip credit for the two (2) hours spent each shift performing "non-tipped" incidental duties, as opposed to the reduced wage they received when performing these incidental duties.

36. Plaintiff and the federal minimum wage class members are entitled to receive at least federal minimum wage for each hour spent performing "non-tipped" incidental work during lunch shifts in which the "non-tipped" work exceeded 20% of the total time worked during that shift.

## **DEFEENDANT REQUIRES PLAINTIFF AND SIMILARLY SITUATED SERVERS AND BARTENDERS TO SPEND MORE THAN 20% OF THE DINNER SHIFT PERFOMRING NON-TIPPED DUTIES**

37. When working the evening "dinner" shift, Plaintiff and all other similarly situated servers and bartenders were to report to work at around 4:00 p.m. and would be scheduled to work through 10:00 p.m.

38. However, before completing each "dinner" shift, Plaintiff and the putative class members were required to clean dining room tables, clean the beverage stations, fill salt and pepper shakers, clean the floors and tables, and to perform other "non-tipped" duties and responsibilities that are merely incident to the employees' primary duties. At a minimum, these responsibilities took between one and a half (1.5) and two (2) hours.

39. Furthermore, at the end of each dinner shift, servers and bartenders were required to clock out and wait for a manager to "Check Out," which is a process whereby Defendant calculated how much money its employees had to tip out to other employees.

40. While Plaintiff and other servers and bartenders were waiting for managers to "check out," they were not allowed to leave work and were often required to continue working, despite having clocked out.

41. This off-the-clock work often lasted between thirty (30) minutes and one and one half (1.5) hours.

42. During a typical "dinner" shift, Plaintiff and putative class members were regularly required to spend a total of ***more than* 20%** of the shift performing the aforementioned "non-tipped" duties and responsibilities.

43. Defendant paid Plaintiff and other similarly situated servers and bartenders the reduced cash wage of $5.44 per hour in 2019, $5.54 per hour in 2020 and $5.63 per hour in 2021.

44. In the years 2016 and 2017, servers and bartenders were compensated at a reduced wage of $5.08 per hour for their first forty (40) hours of work per week. In 2018, servers and bartenders were compensated at the reduced wage of $5.23 per hour for their first forty (40) hours of work per week.

45. As a result, Plaintiff and the putative class members are entitled to receive the $3.02 tip credit for the time spent each shift performing "non-tipped" incidental duties, as opposed to the reduced wage they received when performing these incidental duties.

46. Plaintiff and the federal minimum wage class members are entitled to receive at least federal minimum wage for each hour spent performing "non-tipped" incidental work during dinner shifts in which the "non-tipped" work exceeded 20% of the total time worked during that shift.

## CLASS ALLEGATIONS

47. Class members are treated equally and similarly in the Key Largo, FL restaurants that are owned and operated by Defendant, in that they were required to perform off-the-clock work in one or more workweeks of their employment.

48. Class members are treated equally and similarly in the Key Largo, FL restaurants that are owned and operated by Defendant, in that they were denied full and proper federal overtime wages as a result of off-the-clock work in one or more workweeks of their employment.

49. Class members are treated equally and similarly in the Key Largo, FL restaurants that are owned and operated by Defendant, in that they were denied federal minimum wages when they spent more than 20% of their lunch shifts and dinner shifts performing "non-tipped" work.

50. Defendant employed hundreds of employees in Key Largo who were not paid for off-the-clock work within the past three (3) years.

51. Defendant employed hundreds of employees in Key Largo, FL who were not paid federal overtime wages because they were required to work off-the-clock within the previous three (3) years.

52. Defendant employed hundreds of employees in Key Largo who were not paid federal minimum wage for "non-tipped" work within the past three (3) years.

53. Plaintiff and the class members were subjected to the same policies.

54. Plaintiff and the class members performed the same job duties for Defendant in Key Largo, Florida as restaurant servers and bartenders, and were required to work off-the-clock, and were not compensated appropriate overtime wages, and were otherwise paid in an identical manner by Defendant based on Defendant's failure to compensate Plaintiff and the class members when more than 20% of their shifts consisted of "non-tipped" work.

55. Plaintiff and the class members were not paid the statutory federal minimum wage for certain hours worked within the previous three (3) years.

56. Plaintiff and the class members were not paid statutorily required federal overtime wages for certain hours worked within the previous three (3) years.

57. Defendant failed to keep accurate time and pay records for Plaintiff and all class members to designate how much time was spent performing "non-tipped" work.

58. Defendant further failed to keep accurate time and pay records to designate the *full amount of hours* worked by Plaintiff and other servers and bartenders each workweek.

59. Defendant was aware of the requirements of the FLSA, and the pertinent regulations thereto, yet acted willfully in failing to pay Plaintiff and the class members in accordance with the law.

60. As a result of Defendant's intentional and willful failure to comply with the FLSA, Plaintiff was required to retain the undersigned counsel and is therefore entitled to recover reasonable attorney's fees and costs incurred in the prosecution of these claims.

### COUNT I – COLLECTIVE ACTION FOR FEDERAL MINIMUM WAGES
### (ARISING FROM OFF-THE-CLOCK WORK)

61. Plaintiff hereby re-alleges and re-avers Paragraphs 1 through 60 as though set forth fully herein.

62. Plaintiff and all other similarly situated servers and bartenders are/were entitled to be paid full federal minimum wage for certain hours worked during their employment with Defendant.

63. Plaintiff seeks recovery of federal minimum wages under 29 U.S.C. § 216(b) for herself and the following class because of Defendant's failure to pay federally mandated minimum wages:

> **All restaurant servers and bartenders who worked for Defendant at its restaurants in Key Largo, Florida during the three (3) years preceding this lawsuit who in one or more workweeks were required to work off-the-clock during Restaurant Check-Out.**

64. "Restaurant Check-Out" is a process whereby Defendant requires servers and bartenders to perform close-out duties and secure cash they have collected during a shift, so that a manager can calculate how much money its employees have to tip out to other restaurant employees.

65. For a 30-minute to 1.5-hour period toward the end of each shift, servers and bartenders were required to clock-out and were not permitted leave work and were often required to continue working, despite having clocked out.

66. During this time period, servers and bartenders were required to stay in their uniform, assist customers, and provide additional help and work when needed, all while they were engaged to wait for the restaurant manager to complete the "Restaurant Check-Out" process.

67. The work performed by Plaintiff and similarly situated employees during this time period was more than de minimis.

68. In addition, Plaintiff and other servers and bartenders were engaged to wait during the "Restaurant Check-Out" period because they were not permitted to leave Defendant's premises.

69. Because Plaintiff and all other similarly situated employees were forced to work off-the-clock without compensation while waiting for the managers to complete the "Restaurant Check-Out" process and were not paid for this work, Defendant is not permitted to take the $3.02 per hour tip credit for this work.

70. Defendant willfully failed to pay Plaintiff and the putative class members the full federal minimum wage for one or more weeks of work.

71. As a direct and proximate result of Defendant's deliberate underpayment of wages, Plaintiff and the class members have been damaged in the loss of minimum wages for one or more weeks of work during the employment with Defendant.

72. Defendant's willful and/or intentional violations of entitle Plaintiff and the putative class members to an additional amount of liquidated, or double, damages.

73. As a result of the violations alleged herein, Plaintiff was required to retain the undersigned counsel and is therefore entitled to recover reasonable attorney's fees and costs.

WHEREFORE, Plaintiff, GISELLE ACOSTA, respectfully requests that this Honorable Court enter judgment in her favor and against Defendant, DILLY KEY RESTAURANT

HOLDING, LLC, and award Plaintiff, and all others similarly situated: (a) unliquidated minimum wages; (b) an equal amount of liquidated damages; (c) all reasonable attorney's fees and litigation costs as permitted under the FLSA; and any and all such further relief as this Court deems just and reasonable under the circumstances.

## COUNT II – COLLECTIVE ACTION FOR OVERTIME VIOLATIONS

74. Plaintiff hereby re-alleges and re-avers Paragraphs 1 through 60 as though set forth fully herein.

75. In one or more workweeks during the relevant time period, Plaintiff and all other similarly situated servers and bartenders are/were entitled to be paid overtime wages for certain hours worked during their employment with Defendant.

76. Plaintiff seeks recovery of federal overtime wages under 29 U.S.C. § 216(b) for herself and the following class because of Defendant's failure to pay federally mandated overtime wages:

> **All restaurant servers and bartenders who worked for Defendant at its restaurants in Key Largo, Florida during the three (3) years preceding this lawsuit and whose off-the-clock work in one or more workweeks resulted in overtime hours being worked and not properly compensated.**

77. In one or more workweeks during the relevant time period, Defendant required servers and bartenders to perform off-the-clock work for the benefit of Defendant when Plaintiff and similarly situated individuals were approaching 40 hours of work in a workweek.

78. When Plaintiff and similarly situated servers and bartenders approached 40 hours of work in a workweek, Defendant required the servers and bartenders to clock-out and to continue performing work, so that Defendant's time records would not reflect that Plaintiff and similarly situated servers and bartenders worked overtime hours.

79. In addition, Defendant required Plaintiff and similarly situated servers and bartenders to perform off-the-clock work during the "Restaurant Check Out" process. On other occasions, Plaintiff was engaged to wait for Defendant to complete the "Restaurant Check Out" process but was required to clock-out. This regularly lasted between 30-minutes and 1.5-hours.

80. The off-the-clock work performed by Plaintiff and similarly situated employees during this time period was more than de minimis and resulted in Plaintiff and similarly situated employees crossing the threshold of 40 hours of work in a workweek – even though Defendant's time records may indicate otherwise.

81. Because Plaintiff and all other similarly situated employees were forced to work off-the-clock which resulted in them working over 40 hours a week, Defendant owes Plaintiff and all other similarly situated employees overtime wages.

82. Defendant willfully failed to pay Plaintiff and the putative class members full federal overtime wages in one or more workweeks during the relevant time period.

83. As a direct and proximate result of Defendant's deliberate underpayment of wages, Plaintiff and the class members have been deprived overtime wages for one or more weeks of work during the previous three (3) years.

84. Defendant's willful and/or intentional violations of entitle Plaintiff and the putative class members to an additional amount of liquidated, or double, damages.

85. As a result of the violations alleged herein, Plaintiff was required to retain the undersigned counsel and is therefore entitled to recover reasonable attorney's fees and costs.

WHEREFORE, Plaintiff, GISELLE ACOSTA, respectfully requests that this Honorable Court enter judgment in her favor and against Defendant, DILLY KEY RESTAURANT HOLDING, LLC, and award Plaintiff, and all others similarly situated: (a) unliquidated overtime

wages; (b) an equal amount of liquidated damages; (c) all reasonable attorney's fees and litigation costs as permitted under the FLSA; and any and all such further relief as this Court deems just and reasonable under the circumstances.

### COUNT III - COLLECTIVE ACTION FOR FEDERAL MINIMUM WAGE VIOLATIONS
### (80/20 VIOLATIONS DURING LUNCH SHIFTS)

86. Plaintiff hereby re-avers Paragraphs 1 through 60 as though set forth fully herein.

87. Plaintiff and all others similarly situated are/were entitled to be paid full federal minimum wage for certain hours worked during their employment with Defendant.

88. Defendant failed to compensate Plaintiff and the class members for these violations.

89. Plaintiff and the proposed class members were subjected to similar violations of federal law as a result of the Defendant's failure to pay them the full minimum wage when they were required to spend more than 20% of their shifts performing non-tipped duties.

90. Plaintiff seeks recovery of these federal minimum wages under 29 U.S.C. § 216(b) for herself and the following class for Defendant's failure to pay federally mandated minimum wages:

> **All restaurant servers and bartenders who worked at least one (1) lunch shift for Defendant at its restaurants in Key Largo, Florida during the three (3) years preceding this lawsuit, and were required to spend more than 20% of their lunch shifts performing "non-tipped" incidental duties and did not receive the full applicable federal minimum wage for this work.**

91. Defendant willfully failed to pay Plaintiff and the putative class members the full federal minimum wage for one or more weeks of work.

92. As a direct and proximate result of Defendant's deliberate underpayment of wages, Plaintiff and the class members have been damaged in the loss of minimum wages for one or more weeks of work during the employment with Defendant.

93. Defendant's willful and/or intentional violations of entitle Plaintiff and the putative class members to an additional amount of liquidated, or double, damages.

94. As a result of the violations alleged herein, Plaintiff was required to retain the undersigned counsel and is therefore entitled to recover reasonable attorney's fees and costs.

WHEREFORE, Plaintiff, GISELLE ACOSTA, respectfully requests that this Honorable Court enter judgment in her favor and against Defendant, DILLY KEY RESTAURANT HOLDING, LLC, and award Plaintiff, and all others similarly situated: (a) unliquidated minimum wages; (b) an equal amount of liquidated damages; (c) all reasonable attorney's fees and litigation costs as permitted under the FLSA; and any and all such further relief as this Court deems just and reasonable under the circumstances.

### COUNT IV – COLLECTIVE ACTION FOR FEDERAL MINIMUM WAGE VIOLATIONS
### (80/20 VIOLATION DURING DINNER SHIFTS)

95. Plaintiff hereby re-alleges and re-avers Paragraphs 1 through 60 as though set forth fully herein.

96. Plaintiff and all other similarly situated servers and bartenders are/were entitled to be paid full federal minimum wage for certain hours worked during their employment with Defendant.

97. Plaintiff seeks recovery of federal minimum wages under 29 U.S.C. § 216(b) for herself and the following class for Defendant's failure to pay federally mandated minimum wages:

> **All restaurant servers and bartenders who worked dinner shifts for Defendant at its restaurants in Key Largo, Florida during the three (3) years preceding this lawsuit, and were required to spend more than 20% of their dinner shifts performing "non-tipped" incidental duties and did not receive the full applicable federal minimum wage for this work.**

98. Defendant willfully failed to pay Plaintiff and the putative class members the full federal minimum wage for one or more weeks of work.

99. As a direct and proximate result of Defendant's deliberate underpayment of wages, Plaintiff and the class members have been damaged in the loss of minimum wages for one or more weeks of work during the employment with Defendant.

100. Defendant's willful and/or intentional violations of entitle Plaintiff and the putative class members to an additional amount of liquidated, or double, damages.

101. As a result of the violations alleged herein, Plaintiff was required to retain the undersigned counsel and is therefore entitled to recover reasonable attorney's fees and costs.

WHEREFORE, Plaintiff, GISELLE ACOSTA, respectfully requests that this Honorable Court enter judgment in her favor and against Defendant, DILLY KEY RESTAURANT HOLDING, LLC, and award Plaintiff, and all others similarly situated: (a) unliquidated minimum wages; (b) an equal amount of liquidated damages; (c) all reasonable attorney's fees and litigation costs as permitted under the FLSA; and any and all such further relief as this Court deems just and reasonable under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff, GISELLE ACOSTA, requests and demands a trial by jury on all appropriate claims.

**Dated this 8th day of June 2021.**

Respectfully Submitted,

**USA EMPLOYMENT LAWYERS-JORDAN RICHARDS, PLLC**
805 E. Broward Blvd. Suite 301
Fort Lauderdale, Florida 33301
Ph: (954) 871-0050
*Counsel for Plaintiff*

By: */s/ Jordan Richards*
JORDAN RICHARDS, ESQUIRE
Florida Bar No. 108372
JAKE BLUMSTEIN, ESQUIRE
Florida Bar No. 1017746
*Jordan@jordanrichardspllc.com*
*Jake@jordanrichardspllc.com*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that the foregoing document was filed via CM/ECF on June 8, 2021.

> By: */s/ Jordan Richards*
> JORDAN RICHARDS, ESQUIRE
> Florida Bar No. 108372

**SERVICE LIST**